25-1228, Julia Vazquez and Gustavo Vazquez-Martinez v. Todd Blanche. Thank you. I understand you'd like to reserve two minutes for rebuttal. Please, Your Honor. Please proceed. Good morning, Your Honor. May it please the Court, Glenn Formica for Julia and Gustavo Vazquez. Your Honor, my time this morning is short, so I'll just move right to the point. This case, like many before it, begs the Court to establish a coherent, reasonable and accurate interpretation of 1229, the cancellation or removal for non-permanent residence. As an incentive to the Court, it might, if it chooses to do so, whether on this case. It will reduce the amount of litigation. It will improve the ability for people to benefit from the statute that Congress enacted more than 25 years ago. One of the few graces Congress has given the undocumented is the opportunity to have their removal canceled. Let me be specific. Under, when the BIA attempted to interpret the statute, which doesn't discuss medical hardship, doesn't discuss any of that. It just says something beyond the ordinary or something to that effect. First attempt was Montreal. Extreme and unusual hardship. Extreme and unusual hardship. Correct. So what is this coherent definition that you would propose that we adopt? I'm not sure I found one. Your Honor, I have too much humility to give back to the Court. Thank you for that. I mean, you know, the issue is what is better than that? The standard is extreme and unusual. And by and large, the Board says, well, if this is kind of, this is what happens when people get deported. It's terrible. But it's just the usual terrible. And, therefore, it doesn't qualify as extreme and unusual hardship. So what would you propose as a substitute standard that we could make? Your Honor, the substitute standard, you know, as an advocate, would be contextual. It wouldn't be tied to, well, it's got to be a medical hardship under which, you know, and there has to be no available health care in Mexico. That's a matter of JJJ. That's the thing. I mean, is what you're contemplating that a court would need to create a code of regulations or at least demand that somebody, the Board or some regulatory agency, comes up with a list of things that says, okay, if what you're claiming is, it would look like the regulations under the Social Security Act for disability. If what you're claiming is medical hardship, then here are the kinds of treatments that would be necessary for the person and that wouldn't be available abroad. Or here is the kind of illness that can only be treated in the United States or so on. Or something else where it causes this much suffering and this much pain. And that's the medical one. But if it's educational, then there's a different list of regulations that would all be very specific to say if you meet these three criteria, a child in elementary school as opposed to a high school would have one set of standards for the kind of defect in the country of origin's educational system. But we'd have a different rule for high schools. And here's what that would be. Is that the kind of detail that you're looking for? No, Your Honor. But I would point out respectfully that that question in all of its parts frames the problem beautifully. That's the problem. I mean, Congress did write an enormously broad and, you know, maybe for another day, very ambiguous statute, right? So ambiguous that it's almost unimaginable. Well, I'm not sure how ambiguous it is. If this is extreme, extraordinary, it is both unusual in the sense that it doesn't come up in every case where someone's being deported who has minor children, and it has to be extraordinary. And then we work that out by case law. And there's a lot of case law that tends to say, you know, recognize this kind of thing works and this kind of thing doesn't work. So what is lacking? Well, Your Honor, what's lacking, and speaking from the low position of an immigration lawyer of 30 years, is that none of those apply. I mean, every case is different, Your Honor. Sure. And where the board tried to create regulations through three decisions, Monreal, Andazola, and Racines, it threw up these stick figures, and basically the way immigration courts apply that standard, and then I want to answer your question about a possible alternative, is they say, well, it's this, it's medical, it's, you know, it's economic, but not really economic because that would really depend, and then it's this, and it's this, and it's this, right? The problem is, Your Honor, what if you have, and I'll use the hypothetical, a sensitive 13-year-old teenage boy whose father is being removed, and that triggers, you know, depressive, suicidal, and if the father is removed, the son is, you know, really going to have these mental health issues, right? Well, okay, how does that fit under any of the three standards? The judge is looking at it going, well, the immigration judge, that is, is looking at it and saying, well, you know, Johnny Formica, you don't really have a medical opinion here that states that affirmatively, and I can't speculate. That is speculative if you say it that way, but if you had an expert, suppose you did have an expert opinion that said exactly what you just said, that this child is, you know, not just unhappy, as any child would be, that his father is being deported, but his particular temperament and psychological history is such that he's going to have a significant risk of suicide if his father is deported. And then under a matter of JJ, they say, well, you know, if you go back to that country, he can get counseling. Well, so, I mean, I guess what I'm, what I would ask is, are you trying to make an argument that all of the hardship standards and data that are hardship, whatever they are, have been abrogated by Loeb for Bright and that we need to go back and redo this? Or, I mean, you're not articulating for us a principle that you would have us adopt. So what are we supposed to do? Your Honor, to your first point, yes, I rest. I think it is time for this Court, I know this is tall talk, right, I think it is time for this Court and use Montreal, Anozola, and Racines maybe as the starting point. But to come up with a standard. This Court has incredible ability to do that. I mean, more so, I would argue, than a policy-driven administrative Article II court. Why would we start doing that? I guess I'm not even sure why we would start doing that. You said come up with a standard. Congress has given a standard, right? We don't make standards. Interpret. I apologize, Your Honor. I was going to say. I mean, interpret, but we're just applying it to the facts. But even then, this is not a standard for us to apply. This is a standard for an agency to apply. And we review that to determine, pursuant to whatever deferential standard, and we've said it's clear error and it's a long ball. Our job is simply to determine whether they clearly erred in the application of the standard of the facts, right? Your Honor, I would argue, in my understanding of Loper-Bright, is that the Court would be in a position, post-Chevron, not to give so much deference to the way the BIA has interpreted the statute. I think 1229 should be included. But not the application of the facts. No. Loper-Bright has nothing to do with that. Nothing. So let me ask you this. Did you exhaust the argument that I take it you're making, that the standard is somehow ambiguous and needs to be interpreted, did you exhaust that before the BIA? I don't think you did. Yes, Your Honor. And I think it's implied. Tell me where you said it. Well, Your Honor, if I turn to the BIA decision. No, tell me when you're brief. Your Honor, we argue. Well, I didn't argue policy or constitutional, Your Honor. No, I did not. Okay. Well, if you don't argue policy, you can argue policy to the BIA. And if you didn't argue policy to the BIA, you can't argue policy to us. You have to exhaust issues. So tell me why that doesn't knock that argument out. Not everything. But why can you now argue to us that you don't like the Montreal standard if you didn't tell the BIA that the Montreal standard is not it? Your Honor, in this case, I'd like to answer that in three parts. Because there's also a claims processing rule, and we can cover that, too, as far as waiver. So it's got to be applied. So take it for granted that exhaustion applies if it's properly invoked and if it's applicable. Okay. So saving that, but where the issue is before the Board, and it's illustrative of the problem, is that we argued in front of the Board that the unconscionable standard was raised, right, that the judge was actually applying an unconscionable standard, leaning more on Montreal, which was the first of the tripartite decisions that the BIA attempted to start that. And the other argument that he wasn't relying enough on Racines and whatever the other element is, or whatever the other element is. In fact, only mentions it in, mentions Racines in its But of course, in Barco-Sandoval, we said that's not even a colorable argument. Correct. At least with respect to, I think, it was Racines, that they're all applications of the same standard. And we said it's not even colorable to fault the BIA or the agency for, you know, citing one but not citing all three. Correct. I don't feel like saying you can't, you would fault a district court for not citing all of our Fourth Amendment precedents or something like that. Like, really, you've got to cite all of them? Your Honor, in practical effect, as a quick parenthetical, many courts now will issue a 14-page recitation of all the law, and they'll say we incorporate this by reference. And I'm not arguing that that should be necessary. I think what you're arguing is by saying that you referenced a different case and a different standard, that was effectively arguing that the standard that the IJ had used was wrong. Correct. And the argument that I'm making to this, I'm emphasizing because my time is short, rather than going through my entire brief. The argument I'm making here is one that I really couldn't make to the BIA, which is effectively, BIA, you failed. You had 25 years, and this thing is being applied hand-boned. They can revisit their own precedents. I mean, good luck. No, but I mean, it's like, can you tell us that we got something wrong and we go on bonk and we lose? Correct. So I guess I'm not – you still have to exhaust your argument. You can't say I'm not going to. That's sort of a futility argument. No, Your Honor. And I do believe we did exhaust our argument. But let me be clear in terms of what I'm proposing to this Court this morning, is I'm asking for, in that one regard, I'm asking for a Loper-Bright consideration that maybe this extreme and unusually hardship standard should be interpreted in the first instance. Well, I get that. I mean, if we think that this is ambiguous, the old rule was if it's ambiguous, whatever the agency says goes. Well, now, okay, if it's ambiguous, we have to decide. Same point. We have to decide. Why is it that we shouldn't decide, yeah, but the BIA has been right all along, that what the statute says is extreme and unusual hardship. That may be a very broad standard. It may be somewhat vague. But we know what we're talking about. We're talking about the degree of the hardship and how unusual that is relative to the standard case of deportation. And that's what they did. And when the board has done this, they've identified what is sometimes called the restatement by the ALI. They're a goalpost. They give examples. Here's something that clearly is intentional infliction of extreme emotional distress, and here's something that's clearly trivial. And so in between, good luck. You just have to figure out whether it's extreme or not. And in this case, the board said this is like, or the immigration judge said, this is like this one, this precedent. It didn't say a lot about the other or anything about the other goalpost, but it says it's very like this one. And so I think, based on our precedents, this qualifies as extreme and unusual. What are we supposed to do by way of defining the standard that's going to make that easier for the board or more generous or anything? How are we supposed to do anything other than say Congress says extreme and unusual, and those are the things we're looking for. We're looking for unusual, and we're looking for extremity. And that's how the immigration judge looked at it, and that's what they tried to do. That's what the BIA tried to do. And that's really basically a case-by-case factual determination, and we may disagree in some extreme case where it's ridiculous to say that this isn't extreme and unusual, but that's not what you're arguing. You're arguing that we should somehow write a definition, and you haven't even told us what definition. If we said, you know, tell you what, we think you're right, so tell us what the standard is and we'll write it into our opinion. You haven't even told us what you want. Your Honor, moving to that and really just looking at the facts of this case, the standard should be much more contextual. If we go and we look at the immigration judge's decision, he basically glosses over all hardship just to come to a conclusion that there's no hardship. It's a very glossy decision that doesn't engage the evidence. So it's a misapplication of the standard to the facts. Well, it's a mixed question, of course. But the second part is just that he, as an initial matter, just goes over it, doesn't engage the facts, and applies really what amounts to an unconscionable standard. And then you move to the Board of Immigration Appeals. What do you mean by that? Effectively applies an unconscionable standard. Tell me what you mean by that. Because he doesn't get into more of the mitigating idea of raciness. Because, you know, and one of the – You're saying because he didn't write a long enough opinion? No, no, no, Your Honor. No, but I mean that's kind of what it – you say because he didn't get into it. Your Honor, and I know at this point now I'm jumping around a bit. I want to go back to the three cases, Monreal through raciness. Well, no, stick to the I.J. And what – well, in this – I want to understand the purported flaw in the I.J. opinion because you say he didn't gloss over it. I mean, I'm just – I'm sitting here and I'm flipping through the I.J.'s opinion where he goes through all of these facts, and I'm not understanding your argument that he has sort of applied the wrong legal standards. Your Honor, on page – And then where is that? Give me a page. So, Your Honor, on page 7, page 6 into 7 of Judge Strauss's decision under analysis and findings, here he says, Must be substantially beyond the ordinary hardship. Okay. That's helpful, right? That would be expected when a close family member leaves the country and that cancellation or removal should be limited to truly exceptional circumstances.  Monreal. Okay? Right. No problem with that, right? No problem. Except it appears in the statute, right? Except that if you – The question is whether or not truly and substantial are heightening the standard. Exactly, Your Honor, because if – And faithfully exceptional? I mean, truly? I mean, what does that even mean, that that's a problem? Your Honor – Truly exceptional. You're saying, but also things that are not truly exceptional but are not really exceptional but kind of sort of exceptional? No, Your Honor, it's – That's what I'm saying. I mean, where is this question? I think I'm going back to, is your – are you finding fault with the word truly? Your Honor, I'm faulting the word truly to the extent that it's applied. Now we're turning just to the facts of this case. Yeah, yeah, yeah. What's wrong with – We left Mount Olympus with this – with the broader issue. Turning right to this record, the problem here is – The word truly exceptional, Your Honor, when you face it to this record where you have the son's cardiology condition, which we can find at the record around CAR-195, we have an expert opinion – Pause, pause, pause, because you're getting further and further away. Maybe there's going to be an answer to my question at the end, but I want to get to it now up front. What is the problem with saying truly exceptional? The problem with truly exceptional, Your Honor, is that it's not identifying what – when you read the three BIA decisions, that's not the standard.  Would you find fault with that? No. If you just said exceptional and unusual hardship, Your Honor, that's the legal standard.  Truly – and some of this is wordplay, right? Well, that's what I'm trying to figure out. I'm not going to – Truly seems like actually. So if he had said it has to be actually exceptional, that's just a word that said it must, in fact, be exceptional. So when you're focusing on an articulation of a legal standard, I'm trying to find what the problem is. When you start going into the cardiac issues, it seems to me that you're talking about the application of the legal standards. Which I – which is not fair for this – for this appeal, because that's dwelling into the – So that's trying to be more isolated. That's dwelling into the facts, not the law. The legal standard. Your Honor, the legal standard would be an exceptional and unusual hardship that is in context to the application being made. I just said it. That would be the legal standard from a practitioner's standpoint. And you think that the IJ said that standard, but said, but it doesn't matter the context. Or explicitly said the context doesn't matter. And then I need to ask you, how can you possibly read that when he then goes on to talk for two and a half, three pages about the facts, which I think by definition is the context of the case? Your Honor, I have to step between the two bear traps, because on the one hand, talking about the facts would be beyond the scope of this appeal, right? I mean, I can't get into the –  I mean, it's a preferential standard, but that, I thought, is what the whole appeal is about. It is, Your Honor, but it's more about how the judge was interpreting the legal standard. So you're saying – I think what you're saying – And that – And I'm not saying that I agree or not, but I think what you're saying is by using words like truly and exceptionally – I'm sorry – and extremely exceptional, then that has raised what is unusual and exceptional to unconscionable. Is that – That is effectively – that's what we're implicitly saying, Your Honor. I don't want to – I did not make that argument. Has he used the word unconscionable? Your Honor – That's your interpretation. That's my interpretation. Because unconscionable is a word that either we or the BIA or both have said is not the standard. Racinus says it's not the standard. And that – you know, I just want to underline that, as I do when I make these arguments. You know, the problem when you look at those three decisions is that logically Racinus is the last of the three decisions. I would say that Racinus is the controlling decision, more so than Monreal. And yet – But we've said in – I thought in Barco-Sandoval, we said that wasn't even a colorable argument, that they are different standards. That it's not even colorable. I understood, Your Honor. You have said that, though. Correct. So I'm not arguing – So you're telling us that they're different? What I'm saying, Your Honor, is that when a judge relies only on the Monreal and just forgets that this is – Monreal is part of a whole of the three, then he's not applying the – That's the legal error. That's a legal error. And yet in Barco-Sandoval, we said that that is an argument that does not even reach the level of being colorable. Right? We said that. Correct. But I think in Barco-Sandoval, respectfully, Your Honor, I think with – if you come in and just start beating up the – saying, oh, well, he didn't mention, to your point earlier, well, he just doesn't mention it. He's not listening, you know, reciting. That's how I would interpret Barco-Sandoval. What's different here than it was in Barco-Sandoval when we said that's not a colorable argument. It's the same standard. And you're saying here they are effectively two different standards. What's different about this case as compared to Barco-Sandoval? Barco-Sandoval, Your Honor, was talking about whether or not the – my understanding was whether or not the Court has to go through and recite, you know, the – all three cases to create the legal standard, and if you omit. And in this case, Your Honor, to that point, the judge mentions Racineson in his headache. I think it's on page 3. I'm talking about the substance that he's not applying. And especially if we're going to get down to the – Is that a missing substance then? Because I'm still not following. Racines mediates that standard so that it's not an unconscionable standard. Well, but Montreal wasn't an unconscionable standard either. Racines calls out Montreal for basically saying, hey, especially after Andezola, maybe we're amping this up to such an unreasonable extent. So you're saying Barco-Sandoval was wrong and that they're not the same standards, that Racines is a more petitioner-favorable standard? That's what you're saying? No, Your Honor. They called out Montreal for actually applying an unconscionable standard, which is wrong. No, Your Honor. Okay. That would be tying the shoelaces together. I thought that's what I heard you say. That would be tying the shoelaces and tripping. Now, what it is is that you have three cases that had three substantive applications of this legal standard. They had to do it over three cases. And actually, if you add in Matter of J.J.J., which it did after this case was decided, and I'd point out before I forget, that they applied Matter of J.J. after, which came out in 2020. This case is 2019. When you look at that, it's the standard as a whole contains three different substantive decisions. And the error, not Barco-Sandoval, which is talking about the judge has to, you know, in this case, the judge did not address the complete standard. Okay. I think we have your argument. So why don't we hear from the government? Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. Sana Lee representing the Attorney General. Your Honors, as you've discussed, the Petitioner did not raise the argument about the ambiguity of the hardship standard to the Board. And the Board —  Is that — where is the line between the hardship standard is ambiguous and the I.J. misconstrued the standard? Where is the line between that? I think — what would you say to someone who says that it's merely an extension or a different gloss, but it's effectively the same argument, whereas I understand the government's position is that they're two distinct arguments? If you could help me parse that, I'd appreciate it. Well, in the Petitioner's brief to the Board, he basically argued that the I.J. misapplied Montreal. Right. So what is the distinction between misapplying a legal standard and the hardship standard is ambiguous? Where is the line to make it such that we would find it completely unexhausted? Well, I — You're asking me to assume that they're distinct categories, and I want you to tell me why is that true. Well, okay. For one thing, he specifically argued in the opening brief to this Court that he described, well, there are these three cases that the Board decided, and — And they certainly don't have the burden of showing every case that they have an objection to. Right? You wouldn't — the government wouldn't ask us to go that far. So that doesn't establish exhaustion. Right? Or that's not the standard in order for exhausting. I mean, we're arguing that he's making this specific argument to this Court that he didn't make to the Board. I know, but I'm asking — I understand the argument, I think. You are saying that there is a categorically — categorical distinction between making an argument that the legal standard is ambiguous and they misconstrued the legal standard. I'm asking, is there — where — is there any place in which they blur or where they become an extension or a different gloss or some sort of version of the same argument? Well, I don't think it's close in this case. Well, isn't what you're really saying that if the petitioner here were saying the BIA applied a standard of truly exceptional and extremely unusual and it should have applied a standard without truly and extremely in that formula and took out the adverbs, that would clearly be an argument that said the standard should be something different as opposed to an argument that just says, yeah, they correctly recited the standard, but they applied it wrong because on these facts it does meet the standard and the immigration judge said it wasn't. And the whole problem with this case, as I see it, is that the petitioner has not told us what the actual standard is supposed to be, which makes it hard to characterize this as a case about what the standard is rather than simply the application. That's what blurs the two, is that we're not really being told what the reinterpretation or the resetting of the standard would be. If that were supplied, it may just be a kind of verbal trick. And after all, one of the things going on here is trying to escape a very deferential standard with respect to how a standard is applied by making it into a legal question, but then not giving us what the legal error is. And you're saying, well, they can have it both ways. Either this is really a case that is just about applying the standard, in which case they raise that up the wazoo in the BIA and so that's exhausted. But to whatever extent they're now trying to say this really is a legal question, well, they didn't characterize it that way. And even here, it's not that clear what the legal distinction is between the legal standard that the board did apply and the one that the petitioner would like to see applied. I agree with that, Your Honor, that we don't know what standard they want the board to apply. But that does produce the blurring, right? Because at some level, what you're saying is they so far misapplied the standard. They got it so wrong that they must have been applying a different standard. Well, those two things look very alike. It's hard to tell the difference between a truly, clearly erroneous, outrageous application of standard A and a de facto application of standard B. And so the question then is how can we be confident that it wasn't exhausted and do you think you still prevail if it was? Well, I think the court can be confident that it was not exhausted because I think we're all wondering, whoa, what is he saying now? What did he say below? Because in the brief to this court, he's raising this new claim. And that's the ambiguity claim. Right, Your Honor. And there was nothing, if you look at the brief to the BIA, as I recall, about statutory ambiguity, right? Right, Your Honor. So now that makes it the new thing that's not exhausted, right? Yes. But he did argue Racine and some of those, Montreal, in a mushy way. But sort of at least that's kind of there, right? Not exactly. No, I wouldn't. You don't think he even raised that? No, he just said that the IJ misapplied Montreal. And he tried to distinguish his case from Montreal. So he never raised this argument about, well, there are these three different standards in these three different board cases. Never said that. Never said anything about ambiguity. The only thing he did say was that the IJ applied an unconscionable standard. But saying that the standard was wrong. Okay. I'm just going to ask, do you think we need to defer to the agency after Loper-Bright? Well, Your Honor, the court should find the agency's decisions instructive after Loper-Bright. Is that a yes or a no to Judge Perez's question? Yes, Your Honor. Yes, we should defer to the agency interpretation after Loper-Bright. Well, just based on the agency's expertise, but not – I thought Loper-Bright says we don't defer anymore. Did I miss something? Well, I believe that you could be persuaded by – Well, it's different. We can read something and be persuaded and give account to the – but we're not deferring anymore. I just – Okay. I thought we were way beyond. We don't defer to their interpretation of the statute. We do defer to their fact-finding as to whether the standard is met to the tune of applying a substantial evidence or clearly erroneous kind of fact-finding standard. Yes, Your Honor. As far as meeting the standard, yes. So under Loper-Bright, the court should find the agency's decisions persuasive. If the child ended up needing heart surgery, would the extreme and unusual standard be met? Your Honor, I don't want to make that finding here. I'm just asking a question. I mean, one of his big arguments is that it is impossible to show that extreme and unusual standards have been met. That's why he's saying, at least in argument, that it has been converted into an unconscionable standard. And right now he's young and is able to go a number of months without having to see a cardiologist. But if he needs heart surgery, would that be an extreme and unusual condition? I think it is possible that that could be considered. Would the government think that that was an extreme and unusual? Would you push back on that if the child needed heart surgery? If the IJ found that it was serious, then we would agree with that. If he needed heart surgery tomorrow, you wouldn't be arguing that he should be put on a plane instead of going to a hospital. Is that right? I would not argue that. I hope not. But there's no proof here. If there is some future risk that surgery will be required and the Petitioner is being deported to a country where there are hospitals and there are heart surgeons, then maybe that would be different. It all depends on the particular fact. Yes, Your Honor. And in this case, the Petitioner has not argued about any of that. Because, of course, in this country, anybody can get the world's greatest care by asking for it. And in other countries, that isn't true. Yes, Your Honor. Okay. I think we've covered the waterfront on this. So thank you both very much. Mr. Formica, have you reserved time? I'm trying to remember. Two minutes of rebuttal? Do you have any last points you would like to make? Your Honor, if I just might, I just want to emphasize that even the BIA recognized that we were raising the standard argument. In the last page, too, it says, Next, the Respondents argue that the immigration judge required an unconscionable level of hardship. Respondents brief at 8 to 9. Notice of appeal at 2. My question more to you, and maybe this is the other side, is whether one can challenge the legal standard in any number of ways. So the IJ did this wrong, applied the legal standard wrong in these six different ways. I get that the BIA recognized that you challenged the IJ's application in certain respects. But with respect to this notion that the standard in the statute is ambiguous, was that raised? No, Your Honor. And I just want to be clear that from the opening of the argument, I did not mean to lead this Court to think that I'm now suddenly at oral argument, coming up with a new legal standard. What I'm asking for the Court to do, and I just want to underline that, because that's what we briefed and that's what was before the BIA, is that it needs to look at how it's applying the standard, and it really needs to see how the immigration judge is doing it. Because as I opened, I will close. It is just a free-for-all in front of you, and it's untethered to anything. It's just, eh, maybe. Not in this case. That's what keeps lawyers fully employed. Thank you, Your Honor. Appreciate your time. Thank you. Both of you, we will take the case under advisement.